FRIENDSHIP MANUF'G CO., Respondent, v. ROHRIG, Appellant. FOOTE v. SAME. (Supreme Court, Appellate Division, First Department. April 23. 1897.) Actions by the Friendship Manufacturing Company against William F. Rohrig and by Henry W. Foote against the same defendant. Simon Sultan, for appellant. Sidney H. Stuart, for respondents.

PATTERSON, J. These appeals are from judgments in favor of the plaintiffs entered in two actions upon the reports of a referee. The actions were brought to foreclose mechanics' liens on real estate situated in the city of New York, and belonging to the defendant, and were tried together. The plaintiffs were subcontractors for furnishing material used in the construction of six houses upon the defendant's land. The principal contractor was the McElwee Manufacturing Company. That company entered into a contract with the defendant by which it agreed to furnish a large quantity of woodwork for the agreed sum of $11,500, to be paid in installments, the last of which was to be paid when all the materials necessary fully to complete the contract were delivered to the defendant. Large quantities of material were manufactured and delivered under the McElwee contract up to the month of November, 1891, and much of it was furnished by the plaintiffs in the two present actions. About the 30th of November, 1891, the McElwee Company failed in business, and thereafter did nothing towards the performance of the contract with the defendant, but left a large portion of the material required under the contract still unfurnished and undelivered. There was a provision in the contract to the effect that. if the company failed to deliver material to the buildings as fast as required, the defendant, after giving three days' notice in writing, stating the kind and quantity of material required, should have the privilege of buying the same in the market, and char-

ging the cost to the McElwee Company. On the 30th of November, 1891, the defendant notified the McElwee Company to deliver the balance of material not theretofore delivered, and, such notice not having been complied with, the defendant made purchases of material necessary to complete the contract. The Friendship Manufacturing Company lien for $1,000 and the Foote lien for $1,500 were allowed by the referee, and adjudged to be enforceable against the defendant upon a finding made, that at the time those liens were filed there was due and owing by the defendant under the McElwee contract the sum of $2,715.77, and that sum was apportioned to the two liens after the allowance of a deduction for another and prior undisputed lien. To what extent a mechanic's lien filed by a subcontractor or a material man attaches to property under the mechanic's lien law was determined in Van Clief v. Van Vechten, 130 N. Y. 577, 29 N. E. 1017, and the following observations are made by the court on that subject, namely: "(1) If anything is due to the contractor pursuant to the terms of the contract when the lien is filed, it attaches to that extent. (2) If nothing is due to the contractor according to the contract when the lien is filed, but a certain amount subsequently becomes due thereunder, the lien attaches to the extent of that sum. (3) If nothing is due to the contractor pursuant to the contract when the lien is filed, and he abandons the undertaking without just cause before the owner completes the building according to the contract, and under a provision thereof permitting it, the lien attaches to the extent of the difference between the cost of completion and the amount unpaid when the lien is filed,"—citing authorities. See, also, Campbell v. Coon, 149 N. Y. 561, 44 N. E. 300. The referee found as a fact that prior to the 30th of November, 1891, and prior to the receipt of the notice given by the defendant on that day, the McElwee Company had delivered material under and in pursuance of the terms of the contract, to be used, and which was used, in and upon the buildings mentioned, to the amount and value of $10,000. He also found that the McElwee Company had been paid by the defendant on account of its contract the sum of $7,000. He also found that at the time of the filing of the liens of these plaintiffs there was due and unpaid from the defendant to the McElwee Company the sum of $3,000. He also found that after the giving of the notice on the 30th day of November, 1891, the defendant purchased materials necessary to complete the McElwee contract of the value of $1,784.23. From these findings of fact the account under the contract between Rohrig and the McElwee Company may be thus stated: Total contract price, $11,500; paid on account, $7,000; expended for completing, $1,784.23; balance, $2,-715.77. The account as stated by the referee is not supported by the testimony. Seven thousand dollars was paid in cash before the last payment became due, but the referee seems to have ignored several items which should have been allowed to the defendant on account of or as payments under the contract,—one consisting of a charge for altering certain doors or other material, another for certain hooded closets, and another for certain Venetian blinds substituted for ash blinds,—these several items amounting in value to about $500, so that the total payments or credits before the McElwee Company ceased to do the work upon the premises should be fixed at the sum of $7,500; and the preponderance of testimony establishes that these various items should have been allowed. The referee also failed to make a proper allowance for the amount expended by the defendant in completing the contract after the McElwee Company ceased performance. The referee found that the defendant, after notice to the McElwee Company above referred to was given, purchased $4,649 worth of material that was used in the building, but that only $1,784.23 of that amount was for material required to complete the contract. An examination of the evidence satisfies us that the finding of the referee was erroneous with respect to this item of $1,784.23, and that it should be largely increased; not to the extent, perhaps, claimed by the defendant, but sufficient appears to show that the referee's computations were made upon a mistaken view of the testimony. He found, as stated above, that there was expended by the defendant, after the McElwee Company's relation to the matter ceased, the sum of $4,649. The testimony shows a much larger amount. There were various bills for material purchased of Moore, Kirchner, Sutphin & Meyer, Brereton & McIntosh, Bishop, Terrell & Vroom, and Kroder & Green, which amounted to $991.20. There was also material furnished by the Friendship Manufacturing Company, and amounting to $2,381.87, and material ordered by the McElwee Manufacturing Company, and delivered after its connection with the buildings ceased, amounting to $885.-62, and material furnished by Alyea & Kirchner, who undertook to complete the contract on the defendant's employment, amounting to $981.74. These items aggregate $5,243.40, thus showing an error of the referee of $594.17. It is scarcely worth while to pursue the subject of the state of the evidence with reference to the various items of expenditure necessitated to complete the buildings. It is quite plain that the amounts adopted by the referee are erroneous. But the principal error of fact made by the referee is in his finding that prior to the 30th of November, 1891, and prior to the receipt of the notice given by the defendant to the McElwee Company, there had been furnished and delivered for it, or on its account, material, under the terms of the contract, to the amount and value of $10,000. The strong preponderance of the testimony is directly to the reverse of this finding. There were two witnesses examined by the plaintiffs upon that branch of the case,—one, a Mr. Gaylord, the secretary of the company, who evidently knew nothing whatever of the value of the material furnished before the date mentioned, and who frankly said so more than once in his testimony. The other witness was one Vorhis, and an analysis of his testimony clearly shows that he was equally ignorant upon that subject, and was only guessing at amounts. This witness swears that the value of the material furnished up to the time of the default of the McElwee Company was $12,000,

—that is to say, $500 more than the whole amount of the contract,—and he seeks to explain this by saying that the McElwee Company took the contract for less than what they should have taken it at. He even went so far as to say that the completion of the whole contract according to the specifications would have been worth $17,000, and again he fixed it at $15,000. He says that even more material was in the buildings than was mentioned in the specifications. The conviction one derives from reading the testimony of Mr. Vorhis is that the whole of his estimate is pure guesswork. On the other hand, there is the testimony of three witnesses who give estimates made by them of the value of the material furnished before November, 1891, such estimates having been made after a very careful and minute examination of all the material supplied up to that time. These witnesses were the defendant, C. W. Kirchner, and William Alyea. The appellant very properly complains that all this testimony was completely ignored by the referee, who based his finding upon the confessed ignorance of Gaylord and the singularly insufficient statements of Vorhis. C. W. Kirchner testified that in the latter part of November, 1891, he made an examination of the buildings, and states the method of that examination. He had the specifications of the contract with him, and he went with the defendant through the buildings, from room to room, and from building to building. He says he can state how much the value of the material was that had been put in the buildings at the time he examined them. The value was about $7,000. He also swears that he made a detailed estimate, giving the items, of what it would cost to complete the McElwee contract, and that estimate appears in evidence. William Alyea says that he examined the buildings at the same time that Mr. Vorhis did, and with Mr. Rohrig. He says he knew nothing about the McElwee contract, nor what they were to receive, and that the materials which were supplied prior to November 30th were worth about $7,000, and that the McElwee Company had furnished about that amount. He also says it is not true that what had been furnished to these buildings by the McElwee Company was worth $12,000, and that it was not worth more than $7,000. Not only was the testimony insufficient to authorize the referee to adopt the sum of $10,000 as the value of the material supplied, but the rational view of the whole testimony is that such material was worth only in the neighborhood of $7,000, and that that was about the amount earned by the McElwee Company at the time the contract was taken out of its hands by the defendant, who undertook to complete the work. These findings of the referee as to amounts are fatal to the judgments, which must be reversed, and a new trial ordered before another referee, with costs to abide the event.